FILED

FEB 1 2 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAMONT SAPP,
        Plaintiff,

                                      CV 08-68-PK

                                      OPINION AND
v.                                  ORDER


THE ROMAN CATHOLIC ARCHBISHOP
OF PORTLAND IN OREGON,
        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff *pro se* Shamont Sapp filed this action against defendant The Roman Catholic

Archbishop of Portland in Oregon (the "Archbishop") on January 11, 2008. Sapp alleges the

Archbishop's vicarious liability for sexual battery of a child and for intentional infliction of

emotional distress, and direct liability for negligence. This court has jurisdiction over Sapp's

action pursuant to 28 U.S.C. § 1334(b), based on the relatedness of these proceedings to a case

arising under Title 11 of the United States Code.[1]

---

      [1] Specifically, this action is subject to the future claims fund under the Third Amended
and Restated Joint Plan of Reorganization confirmed in *In re Roman Catholic Archbishop of
Portland*, 04-37154, which, in relevant part, sets a $20 million cap on the total funds available to
pay all claims made against the Archdiocese through 2023.

Page 1 - OPINION AND ORDER

Now before the court are Sapp's two motions (#47, 50) to compel. I have considered the motions and all of the pleadings on file. For the reasons set forth below, Sapp's first motion (#47) to compel and second motion (#50) to compel are each denied.

## LEGAL STANDARDS

### I.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding

any matter, not privileged, that is relevant to the claim or defense of any party.  Rule 26(b)(1) is

to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead

to other matters that would bear on, any issue that is or may be in the case.  *See, e.g.,*

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party

bears the burden of establishing that the discovery is overly broad, unduly burdensome or not

relevant, *see Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000), or

protected by any applicable evidentiary privilege, *see United States v. Ruehle*, 583 F.3d 600, 609

(9th Cir. 2009).  "Boilerplate, generalized objections are inadequate and tantamount to not

making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D.

584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D.

Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an

order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;
>
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33, or
>
> (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B).  Moreover, Rule 37(a)(4) provides that "an evasive or incomplete

disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.

R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of

any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## FACTUAL BACKGROUND

### I.    Underlying Facts

According to the allegations contained in Sapp's third amended complaint, in or around

1979 Sapp came to live with his uncle, John Prince, in Portland, Oregon. Sapp alleges that his

uncle was a parishioner in All Saints Parish in Portland, and that Sapp would accompany his

uncle to confession at All Saints on a weekly basis. At that time, Father T.L. was a priest at All

Saints.

Sapp alleges that in or around June 1979, in the course of furthering his duties as a priest,

Fr. T.L. began regularly hearing Sapp's confession and meeting with him for counseling

purposes, seeking and gaining his trust and obedience. Sapp alleges that, in or around August

1979, as a result of the relationship Fr. T.L. had cultivated with him, Fr. T.L. induced and

directed Sapp to begin engaging in sexual acts with Fr. T.L. Sapp further alleges that Fr. T.L.

paid for Sapp to stay in a motel for five days and nights in August 1979, during which time Fr.

T.L. engaged in sexual acts with Sapp on a nightly basis. Sapp alleges that, at the end of the five-

day period, Fr. T.L. paid Sapp a sum of money, including funds for a bus ticket back to his home

in Pennsylvania. Sapp alleges that he used the money to leave Portland. Sapp alleges that he

repressed these incidents from memory until approximately June 2006.

## II.   History of the Parties' Discovery Disputes

Sapp propounded a first set of requests for production and a first set of interrogatories on October 21, 2008.  The first set of requests sought production of all correspondence between Archbishop Power and Fr. T.L.  regarding Sapp, All Saints Parish members' directories from 1977 to 1981, and Quinquennial reports from the Portland Archdiocese to the Vatican from 1970 through 1980.  The Archbishop's response to the first set of requests for production was due on or around November 24, 2008.  It appears from the parties' assertions that the Archbishop timely responded to the first set of interrogatories and timely provided or made available responsive documents to the extent any such existed, except that the parties agreed that the member directories would be made available to Sapp's then-counsel only, and not to Sapp himself.

On December 14, 2009, Sapp propounded a second set of requests for production and, apparently, propounded for a second time the same set of interrogatories first propounded on October 21, 2008.  The Archbishop's responses to the second set of requests for production and second set of interrogatories were due January 18, 2010.

On December 22, 2009, the Archbishop took the telephonic deposition of Laurie Hagemann Frey.  Sapp was present telephonically at the deposition.  After counsel for the Archbishop had finished questioning the deponent, Sapp attempted to ask a set of questions. Among Sapp's first questions was whether Ms. Frey's former common-law husband and Sapp's uncle, John Prince, used to "beat [Ms. Frey] often."  Counsel for the Archbishop closed the deposition at that time, on the ground that Sapp was conducting himself in a hostile, argumentative and inflammatory manner.

Sapp filed his first motion to compel on December 14, 2009, and his second motion to

Page 5 - OPINION AND ORDER

compel on December 28, 2009.

## ANALYSIS

### I.    First Motion to Compel

In his first motion to compel, Sapp appears to seek an order compelling the Archbishop to respond to his second set of requests for production and/or to his second set of interrogatory requests.[2]  At the time he filed his first motion to compel (December 14, 2009), the Archbishop's responses to those discovery requests were not overdue (the responses were not due until January 18, 2010).  The record before me contains no information as to whether the Archbishop ultimately served timely responses to Sapp's second sets of discovery requests.  To the extent it seeks an order compelling a response to either of the second sets of discovery requests, or to both of them, Sapp's first motion to compel is therefore denied as premature, with leave to refile in the event the Archbishop has not yet served a response to either of the second sets of discovery requests, or in the event Sapp believes the Archbishop's response to the second set of requests for production or to the second set of interrogatory requests was incomplete or inadequate.

In addition, through his first motion to compel Sapp requests an order compelling the Archbishop to permit Sapp to be present during the deposition of Laurie Hagemann Frey.  Because Sapp was, in fact, present at Ms. Frey's telephonic deposition, to the extent the first motion to compel seeks an order compelling Sapp's presence at the Frey deposition, the motion is denied as moot.

---

[2]  The only reference Sapp makes in his first motion to compel to the document requests contained within his first set of requests for production is to the agreement by which the parish member directories were made available to his former counsel and not to him.  There is no indication in the motion that Sapp has any objection to that agreement.

Page 6 - OPINION AND ORDER

## II.    Second Motion to Compel

In his second motion to compel, Sapp seeks an order to compel Laurie Hagemann Frey to respond to a list of 16 written questions attached as an exhibit to the motion. Sapp argues that the questions are calculated to impeach Ms. Frey's credibility as a witness.

The questions are for the most part inflammatory, as, for example, "Were you shooting dope when you were with Mr. Prince?" "What year did you stop using drugs?" and "Did you ever try to get your kids after you had them taken away?" None of the questions have any direct bearing on the truth or falsity of the substance of Ms. Frey's deposition testimony, which was that Mr. Prince did not live in Portland, Oregon, in 1979 as Sapp has alleged. Moreover, Ms. Frey's deposition was noticed by the Archbishop, and it appears likely from the record before me that counsel for the Archbishop properly closed the deposition before Sapp's cross-examination was complete in light of the inflammatory nature of his questions and his evident hostility toward the witness.

Other than the question, "Did Mr. Prince beat you often?" a response to which I decline to compel at this time in light of the circumstances under which it was posed to the witness, none of the questions on Sapp's list were actually posed before Ms. Frey's deposition was closed. There are therefore no pending discovery requests propounded to Ms. Frey as to which any response could be compelled. Sapp's second motion to compel is therefore denied.[3]

### CONCLUSION

For the reasons set forth above, Sapp's first motion (#47) to compel and second motion

---

[3] This disposition will not impact Sapp's right to seek a second telephonic deposition of Ms. Frey pursuant to Federal Civil Procedure Rule 30 or to seek to depose Ms. Frey by written questions pursuant to Federal Civil Procedure Rule 31.

(#50) to compel are each denied.

Dated this 12th day of February, 2010.

Honorable Paul Papak
United States Magistrate Judge

Page 8 - OPINION AND ORDER